UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00429-FDW-DCK

| DAVID JENKINS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | **ORDER** |
| JETTON FAMILY PROPERTIES, LLC, | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. No. 9.) This matter has been fully briefed, (Doc. Nos. 10, 11, 12), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is DENIED.

**I. BACKGROUND**

Plaintiff David Jenkins professes to be a "tester" who files lawsuits like the instant action under Title III of the Americans with Disabilities Act, (the "ADA"), 42 U.S.C. § 12181 *et seq.* (Doc. No. 1, p. 2–3.) He alleges businesses and corporate real-estate owners, like Defendant Jetton Family Properties, LLC, are not accessible to disabled patrons. In the last twelve months, he has filed six similar actions in this District. See Jenkins v. SDS Restaurant Group, LLC, et al., No. 1:24-cv-00212-MR-WCM; Jenkins v. Hangglong, LLC, 3:23-cv-00839-DCK; Jenkins v. Prairie Pizza, LLC, No. 3:24-cv-00269-FDW-DCK; Jenkins v. Charles et al, 3:24-cv-00271-FDW-DCK; Jenkins v. OSEI Enterprises, LLC, No. 3:24-cv-00272; Jenkins v. WP Properties of Charlotte, LLC, No. 3:24-cv-00273-FDW-DCK.

1

Plaintiff resides in North Carolina and is disabled within the meaning of the ADA—he is wheelchair-bound. (Doc. No. 1, p. 2.) See 42 U.S.C. § 12181 *et seq.* He alleges on or about January 2024 he attempted to patronize the Boost Mobile Cellular Store, (the "Store"), located at 4331 The Plaza in Charlotte, NC, and was unable to do so because it was inaccessible to him and other disabled potential patrons. Specifically, he alleges he encountered physical barriers to access including curbs without ramps, uneven pavement outside the purportedly accessible door, no accessible route from the public sidewalk, vehicles parked on purportedly accessible routes, and a sales counter that is too high for wheelchair users. (Doc. No. 1, p. 7–12.) He also alleges there are no designated accessible parking spaces with access aisles and that Defendant fails to maintain the parking lot to ADA standards. (Id., p. 11–12.) Plaintiff alleges these obstacles negatively affected him and denied him "his fundamental right to patronize any place of public accommodation." (Id., p. 5.)

The Store is a place of public accommodation for the purposes of Title III. (Id.) 42 U.S.C. § 12181(7). Plaintiff lives within thirty miles of the Store—somewhere "within the I-485 Beltway." (Doc. No. 11, p. 5.) He alleges he has visited the property multiple times, intends to do so in the future, and visits the area—which is a major commercial thoroughfare in the Charlotte area spanning approximately five miles—frequently. Defendant owns the property where the Boost Mobile is located. Plaintiff filed this action alleging a single claim for declaratory and injunctive relief requiring Defendant to remedy the alleged ADA violations and enact and adhere to a property maintenance policy that will avoid future ADA violations. (Doc. No. 1, pp. 5–17.)

Defendant moves to dismiss Plaintiff's claims for lack of jurisdiction, arguing his so-called "tester" standing is too speculative in this case to meet the constitutional requirements for this Court's exercise of jurisdiction because Plaintiff has not pled a particularized injury and has not

pled sufficient ties to the area. (Doc. No. 9, 10.) Plaintiff opposes the Motion, arguing Plaintiff's allegations are sufficient and his strong ties to the area as a Charlotte resident support his allegations of future harm. (Doc. No. 11.)

## II. STANDARD OF REVIEW

In order for Plaintiff to pursue this action in this Court, he must have standing to sue. Federal district courts exercise limited jurisdiction in that the courts "possess only the jurisdiction authorized ... by the United States Constitution and by federal statute." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009) (citation omitted). Article III of the United States Constitution outlines the federal court's jurisdictional limits. See U.S. Const., art. III, § 2; Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157–58 & n.5 (2014). Relief is only appropriate when there is an actual case or controversy under Article III. See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004). For any case or controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

Because standing under Article III of the Constitution implicates a federal court's subject matter jurisdiction, the court cannot reach the merits of a dispute without confirming that standing exists. See PEM Entities LLC v. Cnty. of Franklin, 57 F.4th 178, 182 (4th Cir. 2023). Rule 12(b)(1) governs the court's analysis of a motion to dismiss for lack of Article III standing because it is premised on the court lacking subject matter jurisdiction to hear the case. See Beyond Sys., Inc. v.

Kraft Foods, Inc., 777 F.3d 712, 715–16 (4th Cir. 2015). When assessing whether a plaintiff possesses Article III standing to sue, a court "accept[s] as valid the merits of [the plaintiff's] legal claims." See Fed. Election Comm'n v. Cruz, 596 U.S. 289, 298 (2022) (citation omitted). The court may also "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2014). The issue of standing may be raised at any time by either party or sua sponte by the Court. See Buscemi v. Bell, 964 F.3d 252, 258 (4th Cir. 2020) (citing Benham v. City of Charlotte, 635 F.3d 129, 134 (4th Cir. 2011)). If a party does not have standing to sue, the court lacks subject matter jurisdiction and must dismiss the action. See White Tail Park, Inc., 413 F.3d at 459; Fed. R. Civ. P. 12(h)(3).

"The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." Cruz, 596 U.S. at 296 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (quoting Casillas v. Madison Avenue Assocs., Inc., 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)). "It is important to avoid 'confus[ing] weakness on the merits with absence of Article III standing.'" PEM Entities LLC v. Cnty. of Franklin, 57 F.4th 178, 182 (4th Cir. 2023) (quoting Davis v. United States, 564 U.S. 229, 249 n.10 (2011)).

Equitable remedies are only available upon a showing that a plaintiff has suffered irreparable injury, "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983). Absent a claim of future injury, a plaintiff lacks standing to bring a claim for

4

injunctive relief. Id. at 105. To hold otherwise would violate the prudential standing limitation prohibiting citizens from suing to enjoin generally unconstitutional conduct. Id. at 111. Further, the allegation that a plaintiff will suffer future injury at the hands of a defendant must be non-speculative and must evince more specificity than the future harm will occur "some day." See Lujan, 504 U.S. at 564.

### III. DISCUSSION

Defendant argues Plaintiff has alleged neither a concrete, particularized injury in fact nor an imminent likelihood of future harm. (Doc. Nos. 10, 12.) Because Plaintiff is a resident of the community where the store is located and his allegations are sufficient to satisfy this constitutional standard under current Fourth Circuit precedent, the Court disagrees.

**A. Concrete and Particularized Injury**

To satisfy Lujan's requirement that an injury be concrete and particularized, a plaintiff must demonstrate an "actual" "invasion of a legally protected interest" that "affect[s] the plaintiff in a personal and individual way." Lujan, 504 U.S. 560 & n.1. Allegations of past injury under the ADA are sufficiently pled "where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 455 (4th Cir. 2017). With respect to this requirement, Plaintiff alleges he attempted to visit the Store in January 2024. He further alleges he "has visited, i.e. attempted to patronize the [Store] on multiple prior occasions," and encountered barriers to access including a lack of accessible parking on entry routes to the Store.

Plaintiff's allegations are sufficient to demonstrate past injury that is concrete and particularized. In Nanni, the Fourth Circuit concluded the plaintiff's allegations that he "personally

5

Case 3:24-cv-00429-FDW-DCK    Document 13    Filed 11/12/24    Page 5 of 8

encountered architectural barriers to access" were sufficient and "there [was] nothing conjectural or hypothetical about the injuries" plaintiff suffered during his visits to the property at issue. 878 F.3d at 455. Plaintiff's allegations here are not identical, but identify some of the same barriers to access, including pavement with inaccessible or non-compliant sloping and a lack of accessible designated parking spots. Nanni, 878 F.3d at 449–50. The Court concludes Nanni, which also involved a wheelchair-bound plaintiff, is dispositive on this issue.

Defendant argues Plaintiff's failure to identify the exact date upon which he visited the Store is fatal to his claim. (Doc. No. 10. p. 5; Doc. No. 12, p. 4) But the plaintiff in Nanni did not identify specific dates—he alleged he visited three or four times between 2013 and 2015. Nanni v. Aberdeen Marketplace, No. 1:15-cv-02570-WMN, Compl., Doc. No. 5, p. 2, ¶ 10 (D. Md. Nov. 5, 2015). And the Fourth Circuit concluded those allegations were sufficient. Nanni, 878 F.3d at 455. Defendant's arguments are therefore not well taken.

**B. Imminent Threat of Future Harm**

In assessing the credibility of Plaintiff's asserted intention to return to the Store, courts consider a number of factors, including: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel. Equal Rights Ctr. v. Abercrombie & Fitch Co., No. JFM-09-3157, 2010 WL 4923300, at *4 (D. Md. Nov. 29, 2010). While the Fourth Circuit has never adopted this four-factor test, it acknowledges importance of a plaintiff's plausible allegations of future harm, specifically considering a plaintiff's proximity to the subject site. Daniels v. Arcade, L.P., 477 F. App'x 125, 129–30 (4th Cir. 2012). See also Harty v. Biggs Park, Inc., No. 7:11-CV-22-F, 2014 WL 4243823, at *2, n.2. And the Court is mindful that neither Plaintiff's litigation history nor status as an "ADA tester" strip him of standing. Nanni, 878 F.3d

at 457 (explicitly rejecting the district court's conclusion that the plaintiff's status as an ADA tester undermined the credibility of his intent to return to the property at issue).[1] For the following reasons, the Court concludes Plaintiff has sufficiently alleged an imminent threat of future harm.

Plaintiff resides in close proximity to the Store. Specifically, he resides within thirty miles, and within Charlotte's I-485 corridor. (Doc. No. 1, p. 3; Doc. No. 11, p. 5.) Defendant argues Plaintiff has not sufficiently alleged proximity because he did not provide his exact address. This Court has found standing where the plaintiff had significantly less frequent occasion to patronize a Charlotte business. Disabled Patriots of America, Inc. v. Promenade Shopping Center LLC, No. 3:08-cv-533-FDW-DCK (W.D.N.C. Nov. 25, 2009) (concluding after an evidentiary hearing that plaintiff, a Florida resident who frequently traveled to Charlotte for gun shows, had standing to bring a Title III action against shopping center on his route of travel). In contrast, in Norkunas v. Park Road Shopping Center, Inc., this Court concluded plaintiff, a resident of Florida and Jefferson, North Carolina, did not have standing to bring a Title III action against a shopping center located several miles off his frequent travel route of I-77 and 120 miles from his North Carolina residence. No. 3:10-cv-210-FDW-DSC, 2-11 WL 10565827, at *1, 5 (W.D.N.C. Apr. 15, 2011). Plaintiff here alleges the Store is located on a busy commercial thoroughfare in Charlotte, his home city. He alleges he visits The Plaza thoroughfare routinely, "numerous times every month, if not every week." (Doc. No. 1, p. 4.) For these reasons, Plaintiff's proximity to the Store and frequency of nearby travel weigh in favor of standing.

---

[1] The Supreme Court recently expressed skepticism about tester standing in Acheson Hotels, LLC v. Laufer, 601 U.S. 1 (2023). Justice Thomas, specifically, is skeptical that so-called "tester" plaintiffs who do not have any intention of visiting a physical property have standing. Id. at 13 (Thomas, J., concurring). But that case was moot for reasons unrelated to the merits of the parties' arguments, and involved an informational injury that differs from the case at bar. Id. at 4, 7. For these reasons, it does not abrogate Fourth Circuit decisions like Nanni, which remain binding on this Court.

Plaintiff alleges he has attempted to patronize the Store once, in January 2024. A single previous visit undercuts Plaintiff's allegations that he intends to return. See, e.g., Payne v. Sears, Roebuck and Co., No. 5:11-CV-614-D, 2012 WL 1965389, at *5 (E.D.N.C. May 31, 2012). Further, Plaintiff's Complaint contains no allegations concerning why he may continue to patronize the Store—he may or may not be a Boost Mobile customer or prospective customer, or be interested in a phone plan that requires frequent visits to the store. Cf. Nanni, 878 F.3d at 453 (explaining the plaintiff's allegations Nanni Marketplace was the ideal stopping point for food and bathroom breaks supported credible threat of future harm). However, in Nanni the Fourth Circuit explicitly rejected the defendant's theory that an ADA plaintiff must "allege such specifics as the precise dates and arrangements" for a return visit or "his reasons for returning." Id. at 456. And it is plausible Plaintiff will seek to return to the Store to enjoy Boost Mobile's services during one of his near-weekly trips to The Plaza. With this Fourth Circuit guidance, and because Plaintiff's proximity to the Store and frequency of nearby travel weigh heavily in favor of standing, the Court concludes Plaintiff has sufficiently alleged imminent future harm of the same kind he encountered when he visited the Store in January 2024.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 9), is DENIED.

**IT IS SO ORDERED.**

Signed: November 12, 2024

Frank D. Whitney
United States District Judge

8

Case 3:24-cv-00429-FDW-DCK     Document 13     Filed 11/12/24     Page 8 of 8